UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


KEVIN WADE ZIMMERMAN,　　　　　　　　　　　Case No. 1:17-cv-00102-MC

　　　　Plaintiff,　　　　　　　　　　　　　　　　　OPINION AND ORDER

　　v.

SEAN FERNS; BILL WARNER; CHRIS
ZUPAN; DEREK ELLENA; JACK
DANIEL; LABEADS YAHWHEE;
JOHN HANNS; CLIFF BARDEN,

　　　　Defendants.

---

MCSHANE, District Judge:

　　　　Plaintiff filed this action under 42 US.C. § 1983, alleging excessive force arising from his arrest by Klamath Falls law enforcement officers.[1] Defendants now move for summary judgment

---

[1] Plaintiff also filed suit against Derek Ellena, a detective assigned to the Basin Interagency Narcotics Enforcement Team (BINET), and Cliff Barden, an Oregon State Police Sergeant also assigned to BINET. Ferns Dec. ¶ 5 & Ex. 1. At the time he named them in his Supplemental Complaint, plaintiff did not inform the court that Ellena and Barden were not employed by the Klamath Falls Police Department and they were not served. Regardless, plaintiff does not allege personal participation in the alleged use of force by either Ellena or Barden to support liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

1　- OPINION AND ORDER

under Federal Rule of Civil Procedure 56, and plaintiff has not responded to the motion.[2] For the reasons explained below, summary judgment is granted.

BACKGROUND

On November 2, 2016, Cpl. Zupan, Ofc. Yahwhee, Ofc. Warner, and Oregon State Police Sgt. Barden approached plaintiff near Eagle Ridge High School. Zupan Decl. & Ex. 1 at 2; Yahwhee Decl. Ex. 1 at 1. The officers had been advised that plaintiff was wanted on an outstanding felony warrant and was likely in possession of methamphetamine and a handgun. Yahwhee Decl. Ex. 1 at 1; Warner Decl. at 2; Zupan Decl. Ex. 1 at 2. Plaintiff was wearing a sweatshirt and had his hands in the front pockets; Cpl. Zupan and Ofc. Warner drew their firearms and told plaintiff he was under arrest. Warren Decl. Ex. 4 at 24-25; Warner Decl. at 2; Zupan Decl. Ex. 1 at 3. Plaintiff looked in both directions and ran away, and officers chased after him. Warren Decl. Ex. 1 at 4, Ex. 4 at 26; Zupan Decl. at 2; Yahwhee Decl. Ex. 1 at 2.

Det. Ferns was in his police vehicle and saw plaintiff running from the officers. Det. Ferns drove his car around the block and into the parking lot of a gas station, where plaintiff was running. Ferns Decl. at 2; Dentinger Decl. Ex. 1. Near the gas pumps, Det. Ferns stopped his vehicle, jumped out, and shouted to plaintiff that he was under arrest. Ferns Decl. at 2. Det. Ferns attempted to tackle plaintiff, and he and plaintiff fell to the ground. *Id.*; Dentinger Decl. Ex. 1 at 15:07:17; Warren Decl. Ex. 4 at 15, 22. Plaintiff was lying on his stomach with his arms underneath him, and Det. Ferns, Ofc. Yahwhee, and Sgt. Barden attempted to secure plaintiff's arms to handcuff him as he struggled. Ferns Decl. Ex. 1 at 3; Yahwhee Decl. Ex. 1 at 2. Ofc. Warner arrived at the scene and eventually secured plaintiff's right arm. Warner Decl. at 3 & Ex.

---

[2] Defendants also move to dismiss for lack of prosecution due to plaintiff's failure to respond to the motion for summary judgment. Given my ruling on summary judgment, the motion to dismiss is denied as moot.

2 - OPINION AND ORDER

1 at 2. Eventually, Det. Ferns was able to secure plaintiff's left arm and handcuff him. Ferns Decl. at 2 & Ex. 1 at 3. Ofc. Yahwhee reported that she heard a "popping noise" just before handcuffs were secured around plaintiff's left wrist. Yahwhee Decl. Ex. 1 at 2.

After plaintiff was handcuffed, Lt. Daniel searched him for weapons and contraband and found none. Daniel Decl. at 2 & Ex. 1 at 1. Plaintiff said that his left arm hurt, and Lt. Daniel transported him to the Sky Lakes Medical Center for examination. *Id.*

Plaintiff was diagnosed with an ulnar fracture in his left arm and received treatment before he was transported to the Klamath County jail. *Id.* at 3 & Ex. 2; Warren Decl. Ex. 1 at 4, Ex. 4 at 6; Plaintiff's arm was in a soft cast splint for two weeks. Warren Decl. Ex. 4 at 5, 7-8.

Plaintiff was indicted on several offenses, including the possession and delivery of methamphetamine, escape, and resisting arrest. *Id.* Ex. 2. As part of a plea agreement, plaintiff pled guilty to delivery of methamphetamine and the remaining counts were dismissed. *Id.* Ex. 3. Plaintiff was remanded to the Oregon Department of Corrections and needed no further treatment for his arm. *Id.* Ex. 4 at 4, 6.

## DISCUSSION

Plaintiff alleges that officers used excessive force when they yanked on his left arm to place him in handcuffs, causing a fracture in his left arm. Defendants maintain that the force used was reasonable and necessary under the circumstances. To prevail on their motion for summary judgment, defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

"The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). "Determining whether the force used to affect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). When evaluating the government's interest in using force, the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Ultimately, the issue is whether the totality of the circumstances justified the force used. *Id.*

Plaintiff does not allege excessive force against all named defendants. Instead, he claims that only Cpl. Zupan used unnecessary force against him. Plaintiff explains that he is suing the other officers involved in his arrest because they allowed Cpl. Zupan to use excessive force against him. Warren Decl. Ex. 1 at 5-6. However, liability under § 1983 "arises only upon a showing of personal participation by" each defendant, and plaintiff cannot sustain claims against officers who did not participate in the allegedly unlawful force. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

With respect to Cpl. Zupan, plaintiff testified as follow during his deposition:

> And then I was laying there, and Chris Zupan, I seen, noticed later, yells, "stop resisting, stop resisting." And he punched me twice in the back of the head and slammed his knee in the back of my head and tries to slam my face in the ground. And then he jumped on the side of me, behind the other officer and put his foot in my side and pried. I told him, "You're breaking my arm." And he pulled harder.

Warren Decl. Ex. 4 at 15-16. Notably, plaintiff's testimony corresponds generally with the reported actions of Det. Ferns, rather than those of Cpl. Zupan. Det. Ferns reported:

> While I was on the ground with Mr. Zimmerman, I kept yelling at Mr. Zimmerman that he was under arrest and to stop resisting arrest. I was able to position Mr. Zimmerman on the ground face down and I was on Mr. Zimmerman's left side….I was trying to pull Mr. Zimmerman's hand from underneath and I was not able to gain control of it. Because Mr. Zimmerman was still resisting my commands and not giving me his left arm, I punched him to the back of the head to attempt to gain control of him. Mr. Zimmerman was not fazed from me striking him and he continued to resist the arrest….I eventually got Mr. Zimmerman's arm from underneath him and I positioned his left arm behind him. Mr. Zimmerman was still trying to pull his left arm away from me so I took ahold of his fingers and I bent his hand backwards at the wrist. I repositioned myself so my left shin was at the back of Mr. Zimmerman's neck to keep him secured on the ground.

Ferns Decl. Ex 1 at 3. Thus, the record reflects that it was Det. Ferns who employed the use of force against plaintiff, and plaintiff does not contradict this evidence. Accordingly, I consider plaintiff's claims to be alleged against Det. Ferns. The remaining question is whether the totality of the circumstances justified Det. Ferns' use of force. I find that they did. *See Blankenhorn,* 485 F.3d at 477 ("Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force.").

It is undisputed that plaintiff attempted to evade arrest by running away from officers after being told he was under arrest. Warren Decl. Ex. 1 at 2-3, Ex. 4 at 27. Based on the undisputed evidence presented by defendants, Det. Ferns and plaintiff fell to the ground as Det. Ferns attempted to apprehend him, and plaintiff kept his hands underneath his body. As plaintiff concedes, the officers had been informed that plaintiff was potentially armed with a firearm. Warren Decl. Ex. 4 at 11. All of the officers involved assert that plaintiff resisted arrest and struggled as they attempted to handcuff him. To restrain plaintiff, Det. Ferns struck plaintiff in the back of the head, placed his knee on the back of plaintiff's neck, pulled on plaintiff's left

arm, and bent his left hand back in an attempt to handcuff him. Once plaintiff was handcuffed, the officers moved away from him. Warner Decl. Ex. 2.

Plaintiff did not respond to defendants' motion or otherwise dispute the assertion that he struggled and resisted arrest when officers attempted to handcuff him. Plaintiff had already fled from the officers, and plaintiff admits the officers had reason to believe he was armed. Balancing plaintiff's interests against those of the government, I find that Det. Ferns was justified in using force to place plaintiff in handcuffs after he attempted to evade arrest and resisted officers' attempts to handcuff him. *Graham*, 490 U.S. at 396.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 24) is GRANTED, and defendants' Motion to Dismiss for Lack of Prosecution is (ECF No. 35) DENIED as moot. This case is DISMISSED.

IT IS SO ORDERED.

DATED this 10th day of May, 2018.

s/ Michael J. McShane  
Michael J. McShane  
United States District Judge